In the Matter of LE ROY DE ROCHE, Petitioner, against LITHGOW M. OSBORNE, Commissioner of Conservation of the State of New York, et al., Respondents.

Supreme Court, Richmond County, June 15, 1942.

*Herman Methfessel* for petitioner.

*John J. Bennett, Jr., Attorney-General (Joseph P. O'Connor* of counsel), for Lithgow M. Osborne et al., respondents.

*William C. Chanler, Corporation Counsel,* for Department of Health of City of New York et al., respondents.

CUFF, J. By this application petitioner seeks (1) to have rescinded the order of the State Conservation Commission dated March 26, 1942, and the resolution of the Board of Health of the City of New York dated March 12, 1942, which order and resolution respectively prohibited the digging of hard clams in Raritan Bay, Princess Bay, and Lower New York Bay; (2) to direct the said Commission and Board to reopen those bays for clam-digging; (3) to restrain said Commission and Board from enforcing the aforesaid order and resolution, and (4) to direct said Commission and Board to fix and determine on a scientific, fair, accurate, and reasonable basis a standard of purity and of sanitary condition for hard clams taken or sold in the State and city of New York, and for the waters overlying such hard clams. The petition alleges that although the digging of clams is prohibited by the order and resolution aforesaid in the New York State section of the bays, digging is not interfered with by the authorities of the State of New Jersey in those parts of the bays which are within that State, in spite of the fact the state line runs through the bays and the same continuous water flows over the clam beds on both sides of the line. At the argument much time was devoted by petitioner's attorney to this grave inconsistency which was aggravated by the further charge that the clams extracted from the New Jersey sections of the bays were sold in the New York city market. The petition is verified April 1, 1942. It seems that this entire contention falls because on April 12, 1942, the State of New Jersey took similar action to that taken by the City and State of New York and has closed its sections of the bays in question (see affidavit of John L. Rice annexed to return of respondent Board of Health), although the Conservation Commission of New York was without knowledge of that action up to April 14, 1942.

Authority is vested in the New York State Conservation Commission to certify those lands from which shellfish may be taken for use as food (Conservation Law, § 305), and in the Board of Health of the City of New York to regulate all matters affecting health in that city. (New York City Charter [1938], § 556.) Each of those authorities in the discharge of its duty duly enacted provisions which, in effect, prohibited removal of shell-

fish from the lands in question. This has interfered with a vast and productive industry. Petitioner does not challenge the power of the Conservation Commission or the Board of Health to act, but he contends that their action, treating with a scientific subject, has been unscientific and as a result is arbitrary, capricious, unreasonable and, consequently, illegal.

The returns filed herein by respondents show that the bays were made available for removal of hard clams on January 1, 1940, and continued as an operating area for clammers until the order and resolution aforesaid were made. At the time these waters were thrown open to the clam industry the two respondents made tests and came to certain conclusions based upon standards of safety accepted by the various authorities vested with control at that time. In making these tests respondents had collaborated with a bacteriologist affiliated with those businessmen interested in the clam industry. At that time (autumn, 1939) the unanimous opinion of these gentlemen was that where tested waters showed a score of 70 coliforms per 100 millilitres that degree of pollution indicated an absence of pathogenic organisms; or, at least, that such condition could be assumed to be safe. No action was taken thereafter, although the return of the Board of Health of the City of New York shows an unaccountable rise in the bays' coliform scores. The authorities of the States of New York and New Jersey as well as those of the city of New York requested the United States Public Health Service to enter upon a comprehensive investigation of the waters of Raritan Bay with relation to the harvesting of hard clams for human consumption found therein. Evidently the Federal Health Service undertook the task, for annexed to the returns interposed by respondents is " A Report on the Public Health Aspects of Clamming in Raritan Bay," being a document emanating from " Federal Security Agency, United States Public Health Service 1941." The authors appear to be an imposing array of bacteriologists and sanitary engineers. The report states that it is " Based on Studies Made Under Supervision of the U. S. Public Health Service " by the New York State Conservation Department, the New Jersey Department of Health, and the New York City Department of Health. This report of 119 pages with numerous plates, charts, maps, and tables, together with experiments, tests, and reports made by the respondents themselves, form the basis for the prohibitory action taken by respondents, which action petitioner is attacking by this proceeding. An examination of the Federal Health Service report reveals a carefully prepared document and

reflects most deliberate, planned action wherein the utmost care was exercised in making the tests and performing experiments to the end that an accurate, fair, and convincing result would be obtained. The report shows the bay waters to be dangerously polluted with sewage, exposing the public to typhoid fever. (Page 94.)

Petitioner's attack upon the report, which is general in character and points to no errors in hypothesis, calculation or conclusion, in no way lessens the value of the study as a guide. Petitioner argues that the report fails to show a single contaminated clam taken from the bay. That is an unimpressive criticism. The presence of polluted waters is sufficient. Authorities should not wait until contamination becomes real. The only point before the court is whether respondents in adopting the resolution and making the order acted arbitrarily, capriciously, or unreasonably, which is the charge of petitioner. Respondents have acted. The law authorized their acts. Their competence is not questioned. They have decided after investigation and careful consideration. In their returns they set forth the sources of information which prompted them to act. I find that these sources are unassailable. On the merits this court approves of the prohibitory action, but, if it did not, on the showing herein presented it would be unwarranted in substituting its judgment for that of the administrative authorities charged with the responsibility.

Whether this application is in the nature of mandamus or certiorari makes no difference, because the distinction between those remedies has been removed by statute. (Civ. Prac. Act, § 1283.) To direct mandatorily a public official to act or desist from acting (both demands are made by the petition), a clear legal right to such relief must appear. That situation has not been presented. Since there is in this instance consideration and even evidence (although no hearing was held) to support the action taken by respondents, the court may not disturb the finding of the respondents whose acts are before it for review.

Petitioner has submitted no proof to sustain his allegations save his own assertions. The application is denied without costs.